LEWIS, J.,
dissenting.
It is truly an unfortunate day for Florida-as a majority of this Court professes to be protecting the legal needs of many Floridians while it is actually rejecting the very simple availability of a limited tool to provide possible relief and a safety net to at least some most in need. I fully agree that the lawyers of this State cannot and should not be required to be the group of individuals solely and exclusively responsible for the monetary needs or programs necessary to provide access to justice for all Florida citizens. The petition we consider today does not seek such a result and *262 was never designed or intended to reach that result. A number of outstanding members of The Florida Bar have simply requested that The Florida Bar be authorized (not mandated) to generate additional funds (not mandatory) as a tool for attempting to enhance access to justice for at least some Floridians in need.
This Court, rather than understanding that the current crisis is multi-layered and will probably require a number of different alternatives and approaches, rejects and disallows this tool and the help and safety net it could provide for a stated unknown and theoretical “more encompassing approach.” This philosophy of refusing the availability of this non-mandatory limited tool because it does not guarantee to solve all problems immediately at one time is both misdirected and puzzling. The access to justice issue in Florida is as wide and deep as the social and economic inequalities within which our society operates. In my view, at least one element absolutely essential to any attempted solution will include access to and the availability of competent counsel to provide legal representation. Directly associated with this element will be support resources to deal with both the complexities and expenses associated with legal matters. There must be ways to fund these needs if we are to move forward. A state-wide, highly structured, and strictly enforced mandatory pro bono program similar to several existing local programs may eliminate the need for some direct-attorney costs, but the associated support costs and expenses of such efforts will still need funding. Using a military metaphor, equal access to justice will require the “boots of lawyers on the ground” and in the trenches to cause “equal access” to become a reality. I suggest that there is an absence of a rational and a reasonable foundation to reject the establishment of the availability of this limited tool. The proponents in favor of allowing the creation of this additional tool have never suggested that the proposal is, would, or should become a total solution to the enormous problem facing so many Floridians or become the financial responsibility of lawyers exclusively. However, we now know with certainty that no Floridian can ever be assisted through the proposed supplementary tool that has been crushed today.
The excuse proffered by some to reject the authorization to create a possible funding mechanism is based on the distinction that the authorization is not mandatory because The Florida Bar opposes the concept. This faulty reasoning overlooks that the leadership of The Florida Bar changes annually and the Board of Governors changes from time to time. This rejection simply ensures that should a Florida Bar program be desired in the future, we will need to repeat this process with its delays again.
Committees and commissions may perform outstanding services and easily solve every problem and issue which adversely impacts access to justice and remedy all ills with a single approach. If that is so, the authorization sought today would not harm or interfere with that total resolution. If that is not so, or a solution requires many years and many facets, we have simply delayed help. I cannot subscribe to a theory that we authorize nothing unless we can resolve all. This reminds me of the story of the lawyer who traveled to the nursing home with the absolute best intentions of assisting the disabled and infirm. Upon his return home, inquiry was made as to how he had assisted the infirm that day. The lawyer responded that so many of those in the nursing home needed soft shoes and a comfortable chair that he did not have the resources to provide soft shoes and comfortable chairs for all, so he simply provid *263 ed none. His family replied with great disappointment that the solution to many large problems may begin in the purchase of a single pair of soft shoes and a single comfortable chair.
I am part of the disappointed Court family who believes that one positive step at a time and one authorization at a time is far better than waiting until committees and commissions make recommendations that may or may not be fulfilled.